

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEONID LITUS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 04 C 6366 |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Leonid Litus' ("Litus") motion for summary judgment and on Defendant's motion for summary judgment. For the reasons stated below, we grant Litus' motion for summary judgment, deny Defendant's motion for summary judgment and remand this action.

## BACKGROUND

Litus filed a claim for social security benefits in March of 2001 claiming that he is disabled due to back, heart, and vision impairments. After Litus' claim was denied, he appeared without counsel before an Administrative Law Judge ("ALJ") for a hearing on May 31, 2002. At the conclusion of the hearing, the ALJ gave Litus

30 days to submit additional records in support of his claim. (AR 341). The ALJ ultimately decided that Litus' claim failed at the fourth step of the established evaluation process and denied Litus' claim. The Appeals Council denied review and Litus now seeks a review of the ALJ's decision.

## LEGAL STANDARD

A reviewing court will uphold an ALJ's decision if it is supported by "substantial evidence" in the record and the ALJ applied the correct legal standards. *Clifford v. Apfel,* 227 F.3d 863, 869 (7th Cir.2000). The Seventh Circuit defines "[s]ubstantial evidence" as what a "reasonable mind might accept as adequate to support a conclusion." *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir.2001). When determining if substantial evidence exists, the court must review the record as a whole but is not allowed to substitute its judgment for the ALJ's by "reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Williams v. Apfel,* 179 F.3d 1066, 1071-72 (7th Cir.1999). Deference should be given to an ALJ's determinations relating to credibility and should be reversed only if the determinations are "patently wrong."*Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir.2000)(quoting*Herr v. Sullivan,* 912 F.2d 178, 181 (7th Cir.1990)). By contrast, the ALJ's legal conclusions are reviewed de novo.*Nelson v. Bowen,* 855 F.2d 503, 506 (7th Cir.1988);*Aidinovski v. Apfel,* 27 F.Supp.2d 1097, 1101

(N.D.Ill.1998). However, an ALJ must provide some explanation that would allow the parties to understand his reasoning for his decision. *See Clifford,* 227 F.3d at 872 (stating that "[w]hile the ALJ is not required to address every piece of evidence, he must articulate some legitimate reason for his decision . . . [and] he must build an accurate and logical bridge from the evidence to his conclusion."). Further, in reviewing the decision, the court must confine its review to the explanation and reasoning given by the ALJ. *Steele v. Barnhart,* 290 F.3d 936, 941 (7th Cir.2002).

## DISCUSSION

### I. Right to Representation

Litus argues that he did not properly waive his right to representation at the hearing before the ALJ. A social security claimant has a right to be represented by counsel at disability hearings. 42 U.S.C. § 406; 20 C.F.R. § 404.1700; *Thompson v. Sullivan,* 933 F.2d 581, 584 (7th Cir. 1991). A claimant can waive his right to counsel if he is "given sufficient information to enable him to intelligently decide whether to retain counsel or proceed *pro se.*" *Id.* The Seventh Circuit has specified that before a claimant can intelligently waive his right to counsel the ALJ must explain: 1) "the manner in which an attorney can aid in the proceedings," 2) "the possibility of free counsel or a contingency arrangement," and 3) the "limitation on attorneys' fees to twenty-five percent of past-due benefits plus required court

approval of the fees." *Id.*

In the instant action, the record reflects that the ALJ told Litus that he had a right to be represented by counsel. (AR 260). However, the record does not indicate that the ALJ explained, as is required by the Seventh Circuit, that there was a limitation on attorneys' fees at twenty-five percent past due-benefits or that the court would have to approve any fees. Also, the record reflects that Litus told the ALJ at the hearing that Litus did not realize that he was going to have to appear in front of a judge at the hearing. (AR 263). The ALJ told Litus that he could either seek a continuance to obtain unpaid counsel or proceed *pro se.* (AR 264). The record clearly indicates that Litus was still asking questions and had not provided the court with an answer when the ALJ told the Litus: "I'm going to have you sign a form that you wish to proceed with the hearing without being represented." (AR 264). The ALJ told Litus that he should have the box on the form checked that would entitle Litus to see new exhibits and then told Litus: "Now, you're going to sign it." (AR 264). Thus, the ALJ told Litus to sign the form before he indicated in the affirmative that he wished to proceed without counsel. Even Defendant admits that the ALJ did not provide Litus with a sufficient disclosure for a valid waiver of his right to representation at the hearing. Defendant admits that the ALJ "did not disclose the contingency cap and that the court would be required to approve fees." (D SJ 8-9). It is thus clear that the ALJ did not properly and adequately advise Litus of his right

to legal representation at the hearing, and we find that, in the interest of justice, this action should be remanded to the ALJ to provide Litus with a complete and proper advisement of his right to representation and provide Litus with an opportunity to obtain counsel if he wishes to do so.

II. Failure to Develop Record

Although, we can remand this action solely based on the fact that the ALJ did not properly and adequately advise Litus of his right to legal representation at the hearing, we also note that a remand is warranted because the ALJ failed to meet his obligation to fully develop the record. In all social security disability hearings, an it is a "basic obligation" of an "ALJ to develop a full and fair record." *Thompson*, 933 F.2d at 585 (quoting *Smith v. Secretary of Health, Education and Welfare*, 587 F.2d 857, 860 (7th Cir. 1978)). When a claimant is not represented by counsel at a disability hearing, "the ALJ has a duty 'scrupulously and conscientiously [to] probe into, inquire of, and explore for all the relevant facts. . . ." *Id.* (quoting *Smith v. Secretary*, 587 F.2d at 860). The ALJ should not act in the capacity of a claimant's counsel. *Id.* at 586. Rather, the ALJ must confine his role to "an examiner who thoroughly develops the facts." *Id.* If the claimant is proceeding before the ALJ in a *pro se* capacity and the ALJ fails "to fulfill this special duty [there] is good cause to remand for gathering of additional evidence." *Id.* For the reasons explained below,

we conclude that the ALJ did not meet his burden to develop the record.

### A. Vision Impairment

Litus claims that he suffers from a variety of conditions that impair his vision such as glaucoma, hyperopia, taxoplamosis, retinal scars, cataracts, prsbyopia, and chorioreinitis. Litus informed the ALJ at the hearing that he had troubling seeing things, that he had trouble focusing on objects, and that he had a blind spot. (AR 272-73). For example, Litus told the ALJ that when he looked at the ALJ he could not see the ALJ, but could see the sign above the ALJ. (AR 272). Litus also informed the ALJ in a supplemental filing that he had trouble seeing entire words of four or more letters. (AR 240). Despite the fact Litus' vision problems were clearly an issue that was brought to the attention of the ALJ, the ALJ did not develop an adequate record to determine the extent of Litus' visual impairment. Litus also submitted various medical records containing diagnoses of the above mentioned conditions. However, the ALJ makes no reference to the medical records or the diagnoses contained therein. Instead the ALJ stated in a conclusory fashion that neither of the physicians that testified at the hearing prior to the filing of the medical records had concluded that Litus had a severe vision impairment. (AR 24).

The ALJ made his conclusions regarding Litus' vision impairment without developing an adequate medical record. The ALJ was presented with extensive

medical records regarding Litus' treatment for his vision problems, which were not reviewed by the physicians that testified at the hearing. One physician at the hearing actually testified that he could not make a determination regarding Litus' left eye because he did not have the medical records to review. (AR 318-19). The medical records regarding Litus' vision problems include complicated findings and diagnoses that require analysis by qualified individuals. The records also include technical exhibits such as microfilm of Litus' eyes. Thus, in order to develop an adequate medial record, the ALJ should have ordered qualified individuals to review the medical records.

Instead of developing an adequate medical record on the issue of Litus' vision impairment, the ALJ made his own determination based on his own perceptions. However, even those perceptions are not adequately supported by the record. The ALJ concluded that Litus did not have a severe vision impairment in part because he admitted that he drove his car and that he was able to use his personal computer. Litus indicated at the hearing that he took the subway to the hearing. (AR 273). He did state that he had driven a car two days before the hearing, but he indicated that he drove his mother to the grocery store. (AR 273). The ALJ's reasoning is flawed because the fact that Litus drove his car does not mean that he was able to see adequately. Litus did not state that he has no vision problems that impair his ability to drive. He merely stated that he drove his mother to the grocery store which might

be out of necessity rather than preference on Litus' part. The record does not tell us if that is the case, which merely illustrates the fact that the ALJ failed to develop a proper record before making his decision. As to the ALJ's conclusion that Litus does not have a severe vision impairment because he can use a personal computer, the ALJ provides no medical basis for such a conclusion. Thus, the ALJ failed to meet his burden to adequately develop the record in regards to Litus' vision impairments.

### B. Other Impairments

Litus also argues that the ALJ failed to fully develop the record in regards to his other physical impairments. Litus testified at the hearing that he had an MRI which reveals that he had a herniated disc, but did not have a copy with him at the hearing. (AR 313). One physician who testified at the hearing indicated that there was not sufficient evidence in the record regarding Litus' herniated disc. (AR 313-16). The ALJ instructed Litus to provide a copy of the MRI after the hearing, which Litus did provide. However, the ALJ did not refer the MRI to a physician, order a new orthopaedic evaluation, or order any additional medical evaluations concerning Litus' back condition. Instead, the ALJ decided, on his own, to minimize the importance of the MRI and conclude that Litus' back condition was not sufficient to support his claim. The ALJ clearly did not meet the burden to develop the record in

this instance.

Defendant acknowledges that Litus testified at the hearing that he had a heart attack in 1973. (D SJ 2). A physician also testified at the hearing regarding Litus' heart condition. The record reflects that after the hearing Litus submitted a copy of a stress test administered to him which would have been of assistance in evaluating his heart condition. However, the ALJ did not refer the stress test results to the testifying physician for his evaluation.

### C. Reliance on Vocational Expert's Testimony and Past Relevant Work

Litus argues that the ALJ improperly relied upon the vocational expert's testimony at the hearing and failed to conduct a proper comparison with Litus' past relevant work. To the extent that an ALJ relies on testimony from a vocational expert, the questions "posed to the expert must incorporate all relevant limitations from which the claimant suffers" because "[o]therwise, the vocational testimony will not reveal whether there are jobs in the national economy that a person like the claimant could perform, and if so, how many." *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003). At the hearing, the ALJ merely referred to Litus' limitations as "approximately light level with restrictions." (AR 338). The ALJ's question did not seek to incorporate all of Litus' pertinent limitations. The ALJ also did not give Litus an opportunity to question the vocational expert which is Litus' right pursuant

to 20 C.F.R. 404.929, 404.950(e). In addition, the decision of the ALJ does not reflect that he conducted the proper comparison with Litus' past relevant work in accordance with *Smith v. Barnhart*, 388 F.3d 251, 252 (7th Cir. 2004). Based upon all of the above analysis, it is clear that the ALJ did not adequately develop the record in accordance with his duty to do so.

## CONCLUSION

Based on the foregoing analysis, we grant Litus' motion for summary judgment, deny Defendant's motion for summary judgment, and remand this action to the ALJ to proceed in a manner consistent with this opinion.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: May 18, 2005